UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW J. SZULIK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| | ) | NO. 12-10018-NMG |
| STATE STREET BANK AND | ) | |
| TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON
# MOTIONS TO COMPEL RAISING CLAIMS OF PRIVILEGE

August 11, 2014

DEIN, U.S.M.J.

This matter is before the court on "State Street's Motion to Compel Plaintiffs to Respond to Requests for Production and Interrogatories" ("State Street Motion") (Docket No. 99) and "Plaintiffs' Motion (i) to Compel Answers to Interrogatories and (ii) for a Finding that a State Street Email Chain is Not Privileged" ("Szulik Motion") (Docket No. 104). After consideration of the written and oral arguments of the parties, the court ruled on most of the issues raised in the motions. However, several disputes remained which raised issues of privilege, and they were taken under advisement. Those issues are addressed herein.

## Documents Obtained by BDO Consulting

State Street has moved to compel documents obtained by BDO Consulting ("BDO") relating to plaintiffs' TAG-managed investments. (Docket No. 100 at 11). State Street contends that BDO, acting as the plaintiffs' agent, communicated with third parties "to gather facts about the investments central to this case." (Id. at 13). State Street argues that these non-privileged documents should be produced by the plaintiffs even though they are in BDO's possession, as the plaintiffs are entitled to obtain these documents from BDO. Plaintiffs argue, however, that BDO was hired "as a non-testifying expert witness to provide professional consulting services and assist them in their lawsuit against James Tagliaferri and TAG" and that the information BDO gathered from third persons is "privileged and immune from disclosure." (Docket No. 112 at 11) (quoting Employees Committed for Justice v. Eastman Kodak Co., 251 F.R.D. 101, 104 (W.D.N.Y. 2008)). This court agrees with the plaintiffs, and the motion to compel the production of documents obtained by BDO is denied. However, nothing herein shall preclude State Street from obtaining the documents from other sources.

Fed. R. Civ. P. 34(a)(1) authorizes a party to request the production of documents within the responding party's "possession, custody, or control." "'[D]ocuments are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those documents upon demand.'" Colon v. Blades, 268 F.R.D. 129, 132 (D.P.R. 2010) (quoting Green v. Fulton, 157 F.R.D. 136, 142 (D. Me. 1994)). In the instant case, State Street contends that the plaintiffs should produce responsive docu-

ments obtained from third parties in BDO's files because BDO obtained those documents in its capacity as an agent for the Szuliks, and the Szuliks have the right to obtain these documents from BDO. As an example of the type of documents at issue, State Street cites to an email from BDO to counsel for IEAH "to request various IEAH documents so that BDO could 'review and assess certain investments made by Mr. Tagliaferri and his companies . . . .'" (Docket No. 100 at 11-12). State Street's argument has some facial appeal, as a party "may not shield relevant information from discovery merely by passing it off to a third party, including a non-testifying expert." In re PolyMedica Corp. Sec. Litig., 235 F.R.D. 28, 33 (D. Mass. 2006). However, State Street is seeking to obtain the facts gathered by BDO at the time it was acting in its capacity as a non-testifying expert, and not merely as the Szuliks' agent. Moreover, State Street is not seeking information that came from the Szuliks' files that they "passed off" to BDO. Under such circumstances, this court is constrained to find that State Street is precluded from gathering the information obtained by BDO under the provisions of Fed. R. Civ. P. 26(b)(4)(D).

Fed. R. Civ. P. 26(b)(4)(D) provides as follows:

> *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i)  as provided in Rule 35(b);[1] or

---

[1] Fed. R. Civ. P. 35(b) relates to physical or mental examinations and has no application to the instant dispute.

> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

"The protection afforded non-testifying experts is distinct from the work-product doctrine and the attorney-client privilege." In re PolyMedica Corp., 235 F.R.D. at 30. The Rule "protects both facts known and opinions held by a non-testifying expert," but it does not prevent a party from seeking "to obtain the same specific facts from other sources." Id. at 33. Thus, Rule 26(b)(4)(D) "creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC, 268 F.R.D. 614, 617 (N.D. Cal. 2010) (internal punctuation and quotations omitted).

In the instant case, the Szuliks have established that BDO was hired by counsel, Holland & Knight LLP, as a non-testifying expert, and that BDO has never been designated as a testifying witness. (Maroney Decl. (Docket No. 113) at ¶ 9 & Ex. 2). Discovery of the facts known to the non-testifying expert through the production of the documents in BDO's possession would simply be "an end-run around the restrictions on discovery of a party's consulting expert." In re Grassi, M.D., MBD No. 13-91269-PBS, 2013 WL 6623189, at *2 (D. Mass. Dec. 13, 2013). State Street has not put forth any showing of exceptional circumstances that would preclude it from getting the information from other sources. Therefore, State Street's motion to compel the production by the Szuliks of the documents gathered by BDO is denied.

## The Chronology

In connection with the litigation the Szuliks brought in New York, Matthew Szulik compiled a chronology to prepare for his deposition. State Street is seeking an order compelling the production of the document, which the Szuliks have refused to produce on the grounds that it is protected by the work product doctrine. This court agrees that the document constitutes work product, and the motion to compel is denied.[2]

> The work product doctrine, which was first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), and has been codified in Fed. R. Civ. P. 2[6](b)(3), "protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation[.]" *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004). Thus, the work product doctrine precludes discovery of work that "is reflected ... in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" as long as it was prepared in anticipation of litigation. *See Hickman*, 329 U.S. at 511, 67 S. Ct. at 393. By extending such protection, the doctrine "preserves a 'zone of privacy' in which a party, his attorney, and in many cases his non-attorney 'representative' can prepare for litigation, 'free from unnecessary intrusion by his adversaries.'" *In re Grand Jury Subpoena*, 220 F.R.D. at 141 (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)). As in the case of other privileges, "[t]he party seeking work product protection has the burden of establishing its applicability." *Id.* at 140.

Bryan Corp. v. ChemWerth, Inc., 296 F.R.D. 31, 37 (D. Mass. 2013).

State Street argues that the chronology cannot be work product because it was not prepared under the direction of an attorney, or to assist the attorney — rather, it was

---

[2] This court's *in camera* review confirms that the chronology is as described by the Szuliks.

prepared to assist the party deponent. See id. (documents that were prepared "in order to aid counsel" were entitled to work product protection). This argument is not persuasive. By now, it is well-established that the doctrine protects writings made by a party, even without any involvement by counsel. See Fed. R. Civ. P. 26(b)(3) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party . . . ."); Goff v. Harrah's Operating Co., 240 F.R.D. 659, 660 (D. Nev. 2007) ("It may be surprising to long-time practitioners that a lawyer may not be involved at all for the work product protection to take effect." (quotations and citations omitted)). To the extent that cases refer to documents that were made to assist counsel, the courts were making distinctions between documents prepared in the ordinary course of business (and possibly shared with counsel) and those made in anticipation of litigation. E.g., Bryan Corp., 296 F.R.D. at 37-38; United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 30 (1st Cir. 2009). In the instant case, however, there is no dispute that Mr. Szulik prepared the chronology in connection with litigation and to assist him in connection with pre-trial discovery. There is no separate requirement in the work product doctrine or in Fed. R. Civ. P. 26(b)(3) that the document actually be used by counsel.

Finally, State Street has not established any substantial need for the chronology. See Bryan, 296 F.R.D. at 42 and authorities cited (ordinary "fact" work product may be ordered produced if there is a substantial need for the materials). Since State Street is free to depose Mr. Szulik, it can obtain the factual information contained in the document

from him.  See Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D. Mass. 1991) (courts will deny discovery of work product "where the party seeking discovery can obtain the information by taking the deposition of witnesses.").[3]  For these reasons, State Street's motion to compel the production of the chronology is denied.

### State Street Email Chain

State Street has sought to claw back an email chain reflecting communications between State Street employees who were conducting a review of TAG clients' accounts.  The review was being done at the request of counsel in furtherance of State Street's compliance with a document subpoena issued by the United States Attorneys' Office for the Southern District of New York seeking copies of account statements for TAG customers.  (See Shields Decl. and Cristoferi Decl. (Docket No. 118)).  State Street claims that the email chain is protected by the attorney-client privilege and work product doctrine.[4]  After State Street sought to claw back the email chain, it produced another copy of the email chain, this time claiming that some (but not all) of the emails were privileged.  It then sought to claw back the second production as well.  In so doing, it

---

[3] This court notes that a different situation may exist if Mr. Szulik uses the document to prepare for a deposition in the instant case.  See Fed. R. Evid. 612(b); T&S Enters., LLC v. Sumitomo Corp. of Am., No. 11cv1318-GPC (MDD), 2012 WL 4845544, at *2 (S.D. Cal. Oct. 10, 2012).  However, any ruling on whether the document would need to be produced because it was reviewed for a deposition would be dependent on the factual circumstances presented at that time.

[4] State Street only listed the attorney-client privilege in its privilege log but has also argued the work product doctrine.  Since the parties have been given ample opportunity to address both theories, the court declines to find the absence of a reference to the work product doctrine on the privilege log to be significant.

followed the protocol set forth in the "Stipulation and Order on Production of Confidential and Privileged Documents" entered in this case by agreement. (Docket No. 59). That Stipulation provides that the production of privileged material will not be deemed a waiver of "any applicable privilege with respect to such Materials or the subject matter of the Materials, irrespective of the level of care, or lack thereof, that the Producing Party took prior to producing the Materials." (Id. ¶ 21).

As an initial matter, this court finds that the email chain is not protected by the attorney-client privilege. The attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). The privilege "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." Id. In the instant case, State Street has not established how emails among its own employees, which are not communicated to counsel and do not even appear to contain information intended to be conveyed to counsel, satisfies any of the elements of the attorney-client privilege. See Columbia Data Prods. Inc. v. Autonomy Corp. Ltd., Civil Action No. 11-12077-NMG, 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012) (internal company emails concerning audit not protected by attorney-client privilege). This is not the situation presented by In re Kellogg Brown & Root, Inc., – F.3d – , 2014 WL 2895939, at *3 (D.C. Cir. June 27, 2014), on which State Street relies, where non-attorneys, acting at the direction of and to assist attorneys, conducted interviews which were deemed to be

protected by the attorney-client privilege. Here, the documents at issue are merely internal employee communications. Under the facts presented in the instant case, the attorney-client privilege does not protect the email chain from disclosure.

This court does find, however, that the email chain is protected by the work product doctrine. As an initial matter, State Street has established that the review of the TAG accounts and related correspondence was done in anticipation of litigation. Counsel has attested that once the subpoena arrived from the U.S. Attorneys Office, litigation was anticipated, although the precise source of the litigation (e.g., TAG-managed account holders, TAG, the government, etc.) was unknown. (Shields Decl. at ¶ 3). These allegations are sufficient to establish that the work was done in anticipation of litigation. See In re PolyMedica Corp., 235 F.R.D. at 31 ("once a government investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement" (quoting In re Grand Jury Subpoena, 220 F.R.D. at 147)). Here, State Street's lawyers "had a subjective belief that litigation was a real possibility," and the belief was "objectively reasonable." Id. (quotations omitted). This is not a situation where the documents were created in the ordinary course of State Street's business obligations. Compare Amica Mut. Ins. Co. v. W.C. Bradley Co., 217 F.R.D. 79, 83 (D. Mass. 2003) (insurance company's investigation to assess coverage for a loss conducted in the ordinary course of business).

The Szuliks' argument that they have a substantial need for the documents is unpersuasive. The Szuliks contend that "the Internal Email Chain provides vital

information as to whether State Street performed its obligations as a custodian, and is likely to lead to other evidence." (Docket No. 105 at 15). However, the Szuliks have not established that they cannot get the facts they need from other sources, such as through depositions.

Finally, in light of the protective order entered into by the parties, the fact that State Street produced another copy of the email chain does not constitute a waiver of any privilege. The protective order allows a party to claw back a document regardless of whether its production was negligent or intentional. Further, "work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure substantially increases the opportunity for potential adversaries to obtain the information." Bryan, 296 F.R.D. at 40 (internal quotation omitted). Here, the disclosure was made only to the Szuliks in the context of litigation, and there was a prompt claw back request. This did not rise to the level of waiver. Such a disclosure did not take place here.

## CONCLUSION

For all the reasons detailed herein, neither the plaintiffs nor the defendant need to produce the documents for which they have claimed a privilege.

                                               / s / Judith Gail Dein
                                               Judith Gail Dein
                                               U.S. Magistrate Judge